[File No. 7009]

## J. J. FERDERER, Appellant, v. NORTHERN PACIFIC RAILWAY COMPANY, a Corporation, Respondent.

(26 NW2d 236)

Opinion filed January 18, 1947.   Rehearing denied March 4, 1947

*Murray & Murray,* for appellant.

*Conmy & Conmy,* for respondent.

CHRISTIANSON, Ch. J. The plaintiff brought this action to recover damages alleged to have been sustained in March, 1943 as a result of the flooding of premises then occupied by him in Morton County in this state; and which flood it is alleged was caused by the negligence of the defendant in the construction of certain works made for the purpose of changing the course of the Cannonball river. The plaintiff alleges that he sustained damages in the sum of $2900.82. The defendant interposed an answer denying generally the allegations of the complaint, except as admitted, qualified or explained. The defendant denies any negligence and alleges that the dykes and embankments were designed and constructed pursuant to proper engineering standards and were adequate to take care of all normal waters and flood waters reasonably foreseeable; also, that at the time of the flood the waters did not reach a greater height than they would have reached if the river had remained in its natural course. It is further alleged that the flood was entirely unprecedented and unforeseeable; that the premises in question were occupied by plaintiff as a tenant for hire and that his landlord held title thereto under covenants which released the defendant from any liability such as that claimed in this action, and that the plaintiff had constructive notice and knowledge of such covenants.

The action was tried to the jury upon the issues formed by the pleadings. The court submitted the case to the jury for a gen-

eral verdict and also submitted the following special interroga- tory, "Was the flood that occurred on or about March 25, 1943 in the valley of the Cannonball River in the vicinity of and on the land occupied by the plaintiff an extraordinary and unprece- dented flood?" In its instructions the court gave directions to the jury for the return of a sealed verdict in the event they were unable to agree upon and return a verdict during the open session of the court. The jury returned a verdict in favor of the defendant. Judgment was entered pursuant to the [verdict] judgment. Thereafter the plaintiff moved for a new trial upon several grounds, among others, (1) irregularities in the proceed- ings of the court by which the plaintiff was prevented from hav- ing a fair trial; and (2) errors in law occurring at the trial and excepted to by the plaintiff. The motion for a new trial was denied and plaintiff has appealed from the judgment and from the order denying his motion for a new trial.

Among the errors assigned by the plaintiff on the motion for a new trial and on this appeal are that the trial judge communi- cated with the jury and gave additional instructions after the cause had been submitted to the jury, in the absence of counsel for the parties and without notice to or the consent of the parties or their counsel. In support of such assignment of error the plaintiff submitted affidavits of five of the jurors and of the counsel for the plaintiff, and also the entries made by the clerk of the court in the minutes. No affidavits were submitted, or other showing made, in opposition to that made by the plaintiff. From the affidavits so submitted it appears that some years ago the courthouse of Morton County was destroyed by fire and that since such destruction the Memorial Building in the City of Mandan has been utilized for county courthouse purposes. The auditorium in the building has been utilized as courtroom for the district court. This case was tried in such auditorium. The case was submitted to the jury in the late afternoon—some time before 5:00 o'clock P. M.—on March 9, 1945. After the trial judge had given the instructions, the jury retired for deliberation to a room reserved for such purposes adjoining the auditorium. The court suggested, however, that after the court had recessed and the

auditorium had been vacated the jury might be taken to the auditorium and permitted to utilize the same while they were deliberating. Thereafter, and while the jury were still deliberating, about 12:30 A. M. on March 10, 1945, the trial judge, together with the clerk of the court and the bailiff, entered the room then occupied by the jury, namely the auditorium. The court reporter was not present and was not called. The attorneys for the respective parties were not notified or afforded an opportunity to be present and had no knowledge of what transpired.

According to the affidavit of one of the jurors the foreman of the jury and the trial judge "had a conversation in substance as follows: That the said foreman asked the said Judge in substance that if the flood was an unprecedented one, would the railway company be liable for the damages caused by such flood; that in response thereto, the said Presiding Judge replied to her in substance, that if the flood was an unprecedented flood, then the railway company would not be liable for the damages that were caused from the flood." According to the affidavit of other jurors "there was then a conversation" between the foreman of the jury and the trial judge "with reference to the flood involved in the case; that the said foreman asked the Judge, in substance, that if the flood was an unprecedented one, could any person or corporation be held liable for damages caused by the flood; that in reply thereto, the said presiding judge replied to her, in substance, that if the flood was an extraordinary or unprecedented flood then the railroad company would not be liable for the damages that resulted from that flood."

The minutes certified by the clerk as part of the record contain the following recital:

"*March 10, 1945*

Court called to order at 12:30 o'clock A. M., March 10, 1945. Jurors in the case of J. J. Ferderer vs Northern Pacific Railway Company reporting. Court asks jurors if they have arrived at a verdict. Foreman Lorraine Huisinger replies 'We have. We have not reached a verdict, we have a split decision.' Court asks jurors if they think they can arrive at a verdict. Foreman

replies she doesn't know. Foreman asks court question as to the charge given in the instructions. Court asks what item she refers to and foreman replies 'It was the one on the fact that if the flood was extra-ordinary or unprecedented that no person or corporation could be held responsible for the condition caused by that flood.' Court replies, 'Yes, that was the substance of the instruction, that if you found from a fair preponderance of the evidence, and the burden of proving that preponderance of the evidence was upon the defendant, was that if this flood condition was an extra-ordinary and unprecedented flood the railroad company would not be liable for the damage that resulted from that flood.' Jurors retire for further deliberation and court adjourns to 9:00 o'clock A. M., March 10, 1945."

The forms of the general verdict and the special interrogatory submitted to the jury contained blank spaces for the insertion of the date. The special interrogatory as returned by the jury was dated March 9 and the general verdict was dated March 10.

The statute relating to additional instructions to the jury after they have retired for deliberation reads as follows: "After the jurors have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed of any point of law arising in the case, they may require the officer to conduct them into court. Upon their being brought into court the information required must be given in the presence of or after notice to the parties or counsel." ND Rev Code 1943, § 28-1419.

In his memorandum decision denying the motion for a new trial the trial judge said, in part: "Under § 28-1419 of 1943 Rev Code a jury may be given required information, but only in the presence of or after notice to the parties or counsel. This occurrence is regrettable and without doubt is error. The question is, however, was such error prejudicial? The information given was merely a reiteration of the general instruction given to the jury on the defense of whether the flood was unprecedented. An unprecedented flood had been defined as one of such unusual occurrence that it could not have been foreseen by men

of ordinary experience and prudence. The jury had on March 9th, 1945, which was the day before the giving of the additional information, answered a special question finding that the flood was unprecedented. They had in fact already determined the lawsuit and didn't know it. This occurrence gives the special question greater credence, since the outcome of the action did not influence the jury in arriving at its special finding of fact. It is, therefore, difficult to see just how the plaintiff has been prejudiced by the erroneous act. . . .

"The undisputed evidence discloses that the railroad embankment in question completely filled in the Cannonball river bed at two points where it crossed over a horseshoe bend in such river and was constructed to a height of 4 to 6 feet above the ground over the area between the two points where the river was intersected. The plaintiff was on the south side and the flood came from the north. There was such a volume of water that not only was the area north of the embankment flooded, but the water rose to a point where it went over the embankment. Under such conditions, river banks or the channel meant nothing. Until the embankment was washed out, plaintiff was protected from the flood and could receive no water from the north, except what flowed through the culverts in the embankment near the river bed on either side. At both points the water was flowing through the culverts from the north.

"Under these conditions, the alleged insufficiency of the channel or the embankment were not the proximate cause of plaintiff's damage, and could not have contributed in any manner to his loss. The same flood waters would have reached plaintiff earlier, had not the embankment been there. 'Plaintiff is not entitled to damages if the injury to his property would have occurred even though defendant's structure had not been erected, . . .' 67 CJ 761.

"So notwithstanding what may have been the general verdict, returned after giving the additional information, and regardless of the jury's finding on the special question, the plaintiff was not entitled to a verdict on the merits.

"Plaintiff's motion for a new trial should be denied and the defendant may prepare an order accordingly."

In his brief and on the oral argument on this appeal respondent's counsel, in effect, concedes that under the rule heretofore announced by this court "it was error for the judge to communicate with the jury as he did in the absence of counsel and in absence of the court reporter." But they contend that such error was not prejudicial because: (1) The jury had answered the special interrogatory before the trial court communicated with the jury and gave the additional instructions, and the answer made to such special interrogatory was decisive of the action; (2) That according to the statement of the trial court in the memorandum opinion, the undisputed evidence in the case established that the plaintiff was not entitled to recover and that the defendant was entitled to a verdict as a matter of law; and (3) That the appellant has failed to present a record showing error; that inasmuch as a statement of case has not been settled it must be presumed that the evidence was such as to entitle the defendant to a verdict as a matter of law.

We are agreed that it was error for the trial judge to communicate with the jury as he did, and we are further of the view that such error must be held to be prejudicial.

Our laws relating to instructions to a jury provide that before they are given, the instructions "shall be reduced to writing except that with the consent of both parties entered in the minutes before the jurors are sworn, the court may instruct the jurors orally"; and "in that case the oral instructions shall be taken down by the court reporter and written out at length in typewriting"; and that "the written instructions, the shorthand notes and transcript of oral instructions, and all requests for instructions whether given or refused shall be filed with the clerk at the close of the trial." ND Rev Code 1943, § 28–1411.

Our laws further provide that "after the jurors have retired for deliberation, if there is disagreement between them as to any part of the testimony, or if they desire to be informed of any point of law arising in the case, they may require the officer to conduct them into court. Upon their being brought into court

the information required must be given in the presence of or after notice to the parties or counsel." ND Rev Code 1943, § 28-1419.

In this case it is undisputed that the jurors had retired for deliberation and that while they were deliberating the trial judge, together with the bailiff and the clerk of court, entered the room then occupied by the jury and that thereupon (according to the clerk's minutes) court was opened, following which a certain colloquy was had between the trial judge and the foreman of the jury. Neither the plaintiff nor his counsel had been notified and neither of them were present. The court reporter was not present and hence no record was made by him of what transpired. According to the affidavits of the jurors, the clerk's minutes, and the memorandum opinion, reference was made by the foreman of the jury and by the trial judge to the instructions, and certain statements were made by the trial judge with respect to the instructions. In his memorandum opinion the trial judge says that "the information given was merely a reiteration of the general instructions given to the jury on the defense of whether the flood was unprecedented." The trial judge lays considerable stress upon the fact that the special interrogatory returned by the jury was dated March 9th and the general verdict was dated March 10th; and from this it is deduced that the issue presented by this special interrogatory had been decided by the jury at the time the additional instructions were given; that the answer to the special interrogatory was decisive of the action and hence there was no prejudice. We are unable to agree with this view.

It does not necessarily follow from the fact that the special interrogatory was dated March 9th that the jury had actually decided and agreed upon the answer to such special interrogatory on March 9th and that the foreman had signed the same on that day, and prior to the time the additional instructions were given. But even if the jury had agreed upon the answer to be given to the special interrogatory prior to the time the additional instructions were given, it would not necessarily follow that the error committed in the giving of such additional instructions

was harmless. The jurors were still deliberating. There had been no final decision by the jury. According to the affidavits, the entries in the clerk's minutes, and the statements in the court's memorandum opinion, the jury had not agreed upon a verdict at the time the additional instructions were given; and according to the affidavit of one of the jurors, there had been no agreement upon the answer to be given to the special interrogatory at the time the additional instructions were given.

Our laws provide that instructions to the jury in a civil action shall be given in writing unless there is consent that the court may instruct orally. That where there is such consent the oral instructions shall be taken down in shorthand by the court reporter and "written out at length in typewriting" and filed with the clerk as part of the record in the action. ND Rev Code 1943, § 28–1411. That "after the jurors have retired for deliberation, if there is disagreement between them as to any part of the testimony, or if they desire to be informed of any point of law arising in the case, they may require the officer to conduct them into court," and "upon their being brought into court the information required *must be given in the presence of or after notice to the parties or counsel.*" ND Rev Code 1943, § 28–1419.

Here, there is a legislative command that where additional instructions are given after the jurors have retired for deliberation, that such instructions "must be given in the presence of or after notice to the parties or counsel." "When the law is in the affirmative that a thing should be done by certain persons or in a certain manner, this affirmative matter contains a negative that it shall not be done by other persons or in another manner." 26 Am & Eng Enc Law, p 605; State v. Tucson Gas, E. L. & P. Co. 15 Ariz 294, 138 P 781; Scott v. Ford, 52 Or 288, 296, 97 P 99; Train v. Sisti, 146 Misc 362, 262 NYS 167, 175, 176; Taylor v. Michigan Pub. Utilities Commission, 217 Mich 400, 186 NW 485; Re Atty. Gen. 2 NM 49, 57; State ex rel. Barlow v. Holtcamp, 322 Mo 258, 14 SW2d 646; Keane v. Strodtman, 323 Mo 161, 18 SW2d 896; Chilton v. Drainage Dist. 228 Mo App 4, 63 SW2d 421; Sutherland, Statutory Construction § 326.

In this case the main charge,—i.e. the instructions given to

the jury before their retirement,—were given orally and taken down by the court reporter in shorthand and later transcribed and made a part of the record. ND Rev Code 1943, § 28–1411. However, the additional instructions were given in such circumstances that they could not be taken down in shorthand by the court reporter and then transcribed and made a part of the record. The court reporter was not present. No record was made such as the statute clearly contemplates shall be made where additional instructions are called for and given. The subject concerning which the foreman made inquiry, and to which the additional instructions were directed, obviously was one of importance.

The communication between the court and the jury was not had and the additional instructions were not given as the law prescribes. Generally the failure to comply with the provisions of a mandatory statute in a matter of such importance as instructions to the jury and communications between the trial judge and the jury constitutes error *per se* and must be deemed to be prejudicial either as a matter of law, or unless and until it is shown that no prejudice resulted or could have resulted from the noncompliance. Fillippon v. Albion Vein Slate Co. 250 US 76, 82, 63 L ed 853, 856, 39 S Ct 435; Parfet v. Kansas City L. Ins. Co. (CCA10th Colo) 128 F2d 361; 2 Thompson, Trials 2d ed §§ 2375, 2555; Hrovat v. Cleveland R. Co. 125 Ohio St 67, 180 NE 549, 84 ALR 215; Note in 84 ALR, pp 225 et seq.; State v. Murphy, 17 ND 48, 115 NW 84, 17 LRA NS 609, 16 Ann Cas 1133; and authorities collated in note beginning at page 609, 17 LRA NS; State v. Mitchell, 49 ND 726, 193 NW 310; Penberthy v. Lee, 51 Wis 261, 8 NW 116. See also Turner & Sons v. Great Northern R. Co. 67 ND 347, 272 NW 489.

In State v. Murphy, 17 ND 48, 115 NW 84, 17 LRA NS 609, 16 Ann Cas 1133, supra, this court held:—"Entering the jury room by the trial judge in the absence of the attorneys, at the request of the jurors, after they have retired to deliberate on their verdict, and having any communication or conversation with the jury in reference to the case, requires the granting of a

new trial, without consideration of the question whether such conversation was prejudicial or not." Syllabus, Par 6.

In State v. Mitchell, 49 ND 726, 193 NW 310, supra, this court held that giving of oral instructions without the consent of the defendant to be prejudicial error without consideration of the substance of the instructions.

In the notice of motion for a new trial plaintiff stated that such motion would be based upon the affidavits of Peter Gress, Frank Gabe, George Zander, George Yantzer, and Paul Miller who sat as jurors in the case, "and Affidavits of other jurors of similar import which will be filed and submitted at the time of the hearing of the motion, certified copy of minutes of the Clerk of Court and Affidavit of J. K. Murray, attorney for the plaintiff, and said motion will be based upon the minutes of the Court and the Clerk of Court and on all the records and files in the above entitled action, including the transcript of instructions, verdict, and special interrogatory and reference will be had to the stenographic report of the testimony, exhibits and all other papers used at the trial."

No statement of the case has been settled so we have no means of knowing the state of the evidence. Respondent's counsel seek to invoke the familiar rules that all reasonable presumptions must be indulged in favor of the judgment and order below and against error; that the burden of affirmatively showing error is on the appellant, and that he must present a record affirmatively showing such error. Raad v. Grant, 43 ND 546, 169 NW 588.

Respondent's counsel contend that inasmuch as a statement of the case has not been settled and the record on appeal does not contain the evidence adduced upon the trial, the appellant has failed to sustain the burden which rests upon him; and that it must be presumed in favor of the judgment and order appealed from that there was no evidence adduced upon the trial which would sustain a verdict in favor of the plaintiff, and that the statement of the trial court in the memorandum decision to that effect must be accepted as correct.

152

The rules as to the presumptions to be indulged on appeal in favor of the decision of the court below and the burden placed on the appellant to show error by the record rest on the assumption that in all legal proceedings judicial tribunals and officials act according to law, and consequently, facts constituting judicial error will not be assumed to exist on appeal to reverse the judgment. 2 Enc Pl & Pr pp 420, 426, 427. Hence, on appeal there is placed upon the appellant the burden of rebutting the presumption of regularity and he must show affirmatively from the record itself facts constituting error in the proceeding below. 2 Enc Pl & Pr, pp 423, 424.

But when the appellant shows affirmatively from the record presented on appeal that error was committed in the court below which might operate to his injury, he has met the burden placed upon him by the presumption in favor of the correctness and regularity of the proceedings in the trial court, and it will not be presumed that the error was in fact harmless or that it was obviated unless this appears from the record. 2 Enc Pl & Pr pp 426-428; 2 Stand Enc Proc p 471; McPherrin v. Jones, 5 ND 261, 65 NW 685; Du Bois v. Perkins, 21 Or 189, 27 P 1044; Carney v. Duniway, 35 Or 131, 57 P 192; Gilmer v. Higley, 110 US 47, 28 L ed 62, 3 S Ct 471; Houk v. Allen, 126 Ind 568, 25 NE 897, 11 LRA 706; 5 CJS p 271; Michalitschke Bros. v. Wells, F. & Co. 118 Cal 683, 50 P 847; Columbia County v. Branch, 31 Fla 71, 12 So 650; First Nat. Bank v. Sutton Mercantile Co. 77 Neb 596, 110 NW 306; Lindemann v. Anderson, 103 Cal App 683, 284 P 1053.

When the appellant shows affirmatively from the record presented on the appeal that error was committed by the trial court which might operate to his injury, the burden is shifted to the respondent to show that the appellant was not in fact prejudiced by the error. McPherrin v. Jones, 5 ND 261, 65 NW 685; Du Bois v. Perkins, 21 Or 189, 27 P 1044; Carney v. Duniway, 35 Or 131, 57 P 192; and Gilmer v. Higley, 110 US 47, 28 L ed 62, 3 S Ct 471, all supra; 2 Enc Pl & Pr pp 426-428.

"Where an error is clearly shown, it cannot be presumed, because the record is incomplete, that the omitted portions would

have corrected it. It must appear from the record itself that it was corrected or rendered nonprejudicial, or judgment will be reversed." 2 Enc Pl & Pr pp 426–428.

"Error affirmatively disclosed by the record will not be presumed to have been subsequently cured." 5 CJS p 271.

In McPherrin v. Jones, 5 ND 261, 65 NW 685, supra, error was assigned only on the instructions to the jury. No statement of the case was settled, and the court had no means of knowing the state of the evidence. The holding of the court is epitomized in paragraph 1 of the syllabus as follows:—"It is error for a court to instruct the jury that, if they believe that a witness has testified falsely as to any material fact in the case, they have a right to wholly disregard his testimony, except so far as it is corroborated by other credible evidence in the case, either positive or circumstantial. They should be told that this is the rule only in cases where the witness has willfully or knowingly or intentionally testified falsely. *A presumption of prejudice arises from an error which might operate to the injury of the party against whom it was committed, and the burden is on the respondent on appeal to show that the appellant was not in fact injured by such error.*"

In Houk v. Allen, 126 Ind 568, 25 NE 897, 11 LRA 706, it was shown by the affidavit of one of the jurors that after encountering difficulty in agreeing upon a verdict the jurors agreed to take a certain number of ballots and render a verdict in favor of the party receiving a majority of the ballots cast, the jurors favoring the party in the minority agreeing to abide by the result. The entire evidence was not contained in the record and it was contended by the appellee that in this state of the record the appellate court ought to assume that the right result had been reached and affirm the judgment notwithstanding the error assigned. In disposing of the contention the Indiana Supreme Court said:—"It is argued for the appellee that, as the entire evidence is not in the record, this court ought to assume, notwithstanding there may have been error in overruling the motion for a new trial, that a right result was reached, and, upon such assumption, affirm the judgment. It is only in

cases where it affirmatively appears that the judgment is right, notwithstanding any errors that may appear in the record, that a judgment will be affirmed, notwithstanding such errors. After the foreman had drawn up and signed the verdict, certain interrogatories which had been submitted to the jury to be answered were answered by the jury, and signed by the foreman, and returned with the verdict, but this did not remove the taint in the verdict."

In Gilmer v. Higley (US) supra, the Supreme Court of the United States reversed a judgment of the Supreme Court of the Territory of Montana. Error was predicated upon rulings of the trial court, sustaining objections to certain questions propounded to the plaintiff on cross-examination. On appeal, the Supreme Court of Montana said, "that since the record did not contain all the testimony, the court could not see that the defendants were injured by the refusal to have the questions answered." 110 US 50, 28 L ed 63, 3 S Ct 471. In considering this holding of the Montana court the Supreme Court of the United States said:—"We have not before heard of such a rule in a revisory court. The farthest any court has gone has been to hold, that when such court can see affirmatively that the error worked no injury to the party appealing, it will be disregarded. This court, in Deery v. Cray, 5 Wall (US) 807, 18 L ed 657, used this language: 'Wherever the application of this rule is sought, it must appear so clear as to be beyond doubt that the error did not and could not have prejudiced the party's rights.'" 110 US 50, 28 L ed 63, 3 S Ct 471.

In Du Bois v. Perkins, 21 Or 189, 27 P 1044, supra, the court said:—"While it is true that error will never be presumed, the converse of the proposition is equally true. When error does affirmatively appear it will not be presumed that it was rendered harmless or removed. If it were so the respondent must see to it that the matter which renders it harmless or removes it is made to affirmatively appear in the bill of exceptions."

In Carney v. Duniway, 35 Or 131, 57 P 192, supra, the court said:—"While the rule that error will not be presumed on

appeal is well settled, it is equally true that where error is affirmatively shown it will not be presumed, because the record is silent, that it was subsequently corrected or rendered harmless, but it must affirmatively so appear, or the judgment will be reversed."

In this case the appellant has presented a record affirmatively showing error. He has presented a record showing the disregard of a mandatory statute. We are all agreed that the communication between the trial judge and the jury and the giving of the additional instructions in the circumstances shown here must be deemed prejudicial.

Respondent's counsel contends that the memorandum opinion of the trial court on the denial of the motion for a new trial constitutes a "finding of fact" by the court that the plaintiff was not entitled to recover, and that the defendant was entitled to a verdict as a matter of law; that consequently the verdict is right and there was no prejudice. In support of this contention respondent's counsel cites, among others, Ryan v. Bremseth, 48 ND 710, 186 NW 818; Farmers' Educational & Co-op. Union Elevator Co. v. Irons, 64 ND 370, 252 NW 380; Altman v. Altman, 68 ND 189, 277 NW 604; Raad v. Grant, 43 ND 546, 169 NW 588. The facts in those cases readily distinguish them from this case. The decisions cited involved appeals in actions tried to the court without a jury, in which the primary duty of the trial court was to hear the evidence and determine the facts and to make findings. The appeals in those cases presented for review the judgment roll alone. There was nothing in the record in conflict with the facts as found by the court and made the basis of the judgment. Of course, in such cases it must be presumed that the findings are in accord with and supported by the evidence. But if in any such case, the trial court also files a memorandum of decision giving the grounds or basis for the decision, such memorandum does not affect the findings of fact made and filed in the case. If the memorandum of decision is contrary to the findings of fact, such findings and not the memorandum of decision control. De Cou v. Howell, 190 Cal 741, 214 P 444, 448. The memorandum may be looked to on appeal to ascertain

the reasons for, and as throwing light upon, the decision and the process of reasoning by which it was reached. 4 CJS p 1716, § 1215; 2 Cal Jur 488, Appeal and Error, § 235. But a memorandum of decision of the trial judge is not a "finding of facts." Utah Commercial & Sav. Bank v. Fox, 44 Utah 323, 140 P 660; Preston v. Preston, 102 Conn 96, 128 A 292; Hendryx v. Perkins (CCA 1st) 123 F 268, 4 CJS, pp 1209 et seq., 1715 et seq.; 29 Words & Phrases, Perm ed p 589; 3 Am Jur 226 et seq., Appeal and Error.

In the memorandum of decision in this case the trial court stated the reasons for the conclusions which he reached and gave direction as to the order to be prepared and entered. 29 Words & Phrases, Perm ed p 589. In such memorandum of decision the trial court made certain statements as to his view concerning the evidence adduced upon the trial, but these statements do not constitute, or have the same effect as, "findings of fact" in an action tried to the court. 3 Am Jur 226 et seq., Appeal and Error; 2 Cal Jur 488, Appeal and Error, § 235; 4 CJS, p 1716, § 1215.

It is stated by respondent's counsel and not denied that at the close of the testimony the defendant's counsel moved the court to direct the jury to return a verdict in favor of the defendant for a dismissal of the action and that such motion was denied and the case submitted to the jury. Under the law as it then existed there was no restriction upon the authority of the court to grant such motion. For the statute which formerly existed and which provided that when such motion was made at the close of the testimony, and the adverse party objected thereto, such motion should be denied and the court should submit to the jury such issue or issues within the pleadings on which any evidence had been taken as either or any party to the action should request, but upon subsequent motion, by such moving party after judgment rendered in such action, the judgment should be entered notwithstanding the verdict (Laws 1935, Ch 245) had been superseded. ND Rev Code 1943, §§ 28–1509, 28–1510.

As said, the court refused to direct a verdict in favor of the defendant and submitted the case to the jury. In its instructions to the jury the court withdrew from the jury's consideration the

defense that the plaintiff's landlord held title to the premises occupied by the plaintiff under covenants which released the defendant from liability. The court instructed the jury that they were not to consider that question at all. This was the only issue withdrawn. All the other issues raised by the pleadings were submitted to the jury as questions of fact. The court instructed the jury that "it is the duty of the plaintiff to prove the allegations of his complaint by a fair preponderance of the evidence, and by a fair preponderance of the evidence is meant the greater weight of evidence"; and that "if the plaintiff has failed to prove the allegations of his complaint by a fair preponderance of the evidence your verdict should be for the defendant." The court instructed the jury at length as to the law concerning liability in obstructing water courses and instructed the jury "that the undisputed testimony in the case discloses that the Cannonball River running through the land leased by the plaintiff and over which the defendant constructed its railway in question was at all times in this action a water course as defined by our law."

In its instructions the court said, in part:—"Now, in this particular case the gist of the action is to determine whether or not in the construction of the right-of-way and establishing the drainage ditch in question the company, that is the defendant in this action, was negligent in such construction. If the company were negligent, then your verdict must be for the plaintiff, if not, then for the defendant. . . .

"Now, you must determine whether or not in the construction of this grade and the drainage ditch providing for the flow of water, whether or not the company was negligent and failed to do something that an ordinarily prudent man would have done under like or similar circumstances. In determining whether or not this defendant was negligent it will be necessary to determine from the evidence the size of the drainage ditch and take into consideration the drainage area and all the circumstances surrounding as to whether such ditch would under ordinary circumstances take care of the water of an ordinary flood condition and without injury to the adjoining land owner.

"It is required to be established by the plaintiff that the proximate cause of the injury to this plaintiff was the result of the defendant's negligence, and I'll define what is meant by proximate cause. A proximate cause is that cause which as a natural and continuous sequence, unbroken by any controlling or intervening cause, produced the injury and without which it would not have occurred.

"Now, the next question to be determined is whether or not the flood conditions which existed at the place in question on or about March 25, 1943, at which time the plaintiff is alleged to have suffered the injuries complained of, whether such flood condition was an extraordinary or unprecedented one. If you believe from the evidence that the condition was an extraordinary or unprecedented condition and could not reasonably have been foreseen, then the company is not responsible for the injuries sustained, it being contemplated under the law that it was an act of God and the defendant cannot be held responsible, but the burden is thrown on the defendant to establish this fact by a fair preponderance of the evidence, and as before indicated we mean by a fair preponderance of the evidence the greater weight of evidence. The defendant must establish that it was in fact an extraordinary and unprecedented condition.

"In that connection the jury are instructed that the burden then, as indicated, is upon the defendant to prove by a fair preponderance of the evidence that this was an act of God and was an extraordinary and unprecedented condition and was the entire cause of the plaintiff's loss, which in so doing would in itself establish the absence of negligence on the part of the defendant company, and if the defendant proves by a fair preponderance of the evidence that this was an extraordinary and unprecedented condition then it establishes that the defendant was free from negligence and entitled to your verdict.

"The plaintiff must establish by a fair preponderance of the evidence that the defendant was negligent in establishing the grade and providing an insufficient ditch to take care of the ordinary drainage of water, and if you so find that fact then your verdict must be in favor of the plaintiff, and then you deter-

mine the amount of damage suffered, if any, to his personal property by such flood, but if you believe that the defendant is not guilty of any negligence in the construction of such embankment and drainage ditch over its right-of-way in question and you believe that the damages were the result of an extraordinary and unprecedented condition, then your verdict must be in favor of the defendant.

You are further instructed that if you find from the evidence in this case that there was an overflow of water from the artificial or diverted channel of the Cannonball River onto the land occupied by the plaintiff, and if you further find from the evidence that no more water flowed onto the land so occupied by the plaintiff than would have flowed thereon in a state of nature, that is without diversion or overflow from the new channel, the dike or railroad embankment, then and in that event defendant is not legally responsible for the damage, if any, and your verdict should be for the defendant. In other words, if the damage to the plaintiff's property would have occurred even though defendant's embankment and ditch had not been constructed, the defendant is not liable. . . .

"If you believe that the plaintiff is entitled to recover as heretofore instructed, then it is your duty to determine the amount of damages sustained by him. If you find in favor of the plaintiff then he is entitled to recover such damages as he has reasonably suffered by reason of the negligence of the defendant to provide a suitable and sufficient drain to take care of the water naturally running through the natural watercourse draining that territory which may compensate him for all the detriment proximately caused thereby, not to exceed $2900.82. . . .

"Members of the jury, you are the judges of all questions of fact in this case and to the jury alone belongs the duty of hearing the evidence under the Court's instructions and of determining the credibility of the witnesses."

The cause had been submitted to the jury more than seven hours before the additional instructions were given. The jury had not agreed upon a verdict and were still deliberating upon

the questions of fact which had been submitted to them under the original instructions. Apparently, they had not found the evidence on any or all of the controlling issues of fact to be one-sided.

Upon the record presented on this appeal the error committed cannot be said to have been harmless, it must be presumed to have been prejudicial. The judgment and order denying a new trial must be reversed. It is so ordered.

MORRIS, BURKE, NUESSLE and BURR, JJ., concur.

## On Petition for Rehearing

CHRISTIANSON, Ch. J. The defendant has petitioned for a rehearing. In the petition it is pointed out that the order denying the motion for a new trial recites that the trial court has "written a memorandum opinion setting forth his reasons for denying plaintiff's motion for a new trial" and that "pursuant to and because of the reasons fully set forth in the memorandum opinion filed herein it is hereby ordered that plaintiff's motion for a new trial should and the same is hereby in all things denied." And it is argued that consequently the order constituted a finding of fact by the trial court and that the court's conclusions as to the facts established by the evidence upon the trial stated in the memorandum of decision must be given the same effect as the findings of fact in an action tried to the court. This matter was fully considered in the former opinion and we adhere to what was there said:—The statement by the trial judge of his reasons for denying a new trial does not have the effect and is not accompanied by the same presumptions which attach to the findings of fact in an action tried to the court. We are agreed that, giving due weight to what is affirmatively disclosed by the record including the reasons assigned by the trial court for denying the motion for a new trial, the presumption of prejudice resulting from the conmunication by the trial judge with the jury has not been overcome and such error has not been shown to be non-prejudicial.

The petition for rehearing is supplemented by a motion on the part of the defendant that in the event the petition for rehearing is denied, this court "makes its order" remanding and returning the record in the case to the district court:—(1) "For a determination of the issue raised by defendant's motion for a directed verdict or so a motion for judgment notwithstanding can be made, or if this can not be granted"; (2) "So that the order denying the motion for a new trial can be amended to show specifically and other than by reference that the motion for a new trial was denied because no case had been made by the plaintiff, or if this can not be granted"; (3) "So that a transcript of the evidence may be secured and settled as part of the record herein, and after proper certification transmitted to this court"; and (4) Staying all "further proceedings in this court and holding the final determination of the appeal in abeyance until the trial court acts and certifies the record back to this court."

In support of the motion defendant has filed a brief wherein attention is called to a former case wherein this court remanded the record to the trial court with leave to the parties to apply for the settlement of a statement of the case. The situation presented in that case and the one presented here are quite different. In that case the basic error assigned by the appellant (the plaintiff) was the ruling of the trial court in directing a verdict for the defendant.

The judgment recited that the defendant at the close of the testimony moved the court to direct the jury to return a verdict for the dismissal of the action; that the court granted the motion and that verdict was returned accordingly. There was no statement of the case but the appellant presented as a part of the record on appeal a certified copy of the minutes of the clerk. Such minutes recited that the defendant moved for a directed verdict; that the plaintiff resisted the motion; that the motion was granted and verdict directed accordingly. The law in force at the time of the trial provided that when a party moves the court to direct a verdict in his favor "and the adverse party objects thereto, such motion shall be denied and the court shall

submit to the jury such issue or issues within the pleadings on which any evidence has been taken as either or any party to the action shall request." Ch 245, Laws 1935.

The only thing in the record tending to show that the plaintiff had objected to the granting of the motion for a directed verdict was the recital in the clerk's minutes,—the judgment did not recite that such objection was made. The respondent contended that the clerk's minutes were not part of the judgment roll unless and until they were made a part of a settled statement of the case; that hence the recital in the minutes could not be considered and therefore the record failed to show that there had been objection by the "adverse party" to the granting of the motion for a directed verdict. With this condition of the record the plaintiff requested that the record be remanded to the district court to the end that the defect in the record might be supplied and that an opportunity might be afforded to have a statement of the case settled and certified showing what had transpired upon the trial anterior to the direction of the verdict, including the objection made by the defendant to the granting of the motion for a directed verdict. While there was objection by the respondent to the motion to remand it was not denied that the plaintiff had in fact objected to the granting of the motion for a directed verdict, and this court remanded the record with leave to the parties to apply to the trial court for a settlement of a statement of the case.

In that case it seemed probable that the appellant had been deprived of a substantial right by the ruling of the trial court, and it was clear that he was wholly without any remedy of correction (14 Enc Pl & Pr p 982) other than a review of the assigned error on the then pending appeal. Such review could be had only if the record were supplemented by a statement of the case showing that plaintiff objected to the granting of the motion for a directed verdict. Hence, unless permission were granted to remand the record with leave to the parties to apply to the trial court for settlement of a statement of case, the result would be not only that the error sought to be reviewed

could not be reviewed, but the action itself would be finally determined. In other words, unless the record were supplemented by a statement of the case, the result would be a final determination of the action—a determination which would dispose of the cause on the merits without appellant being afforded an opportunity to have a review of the ruling which the record indicated probably was erroneous and which might have operated to his prejudice.

The situation in this case is quite different. Under the decision in this case no rights of the parties are finally determined. The decision only opens "the way for a reinvestigation of the entire case upon its facts and merits." Pengilly v. J. I. Case Threshing Mach. Co. 11 ND 249, 255, 256, 91 NW 63.

The parties to an action are entitled to a fair trial. The record in this case shows that the plaintiff did not have a fair trial. Upon a retrial presumptively both parties will receive a fair trial. We are of the opinion that the interests of justice will be best subserved by remanding the case for a new trial. The petition for a rehearing, and the motion to remand are denied.

MORRIS, BURKE, NUESSLE and BURR, JJ., concur.